## TRIAL—MOTIONS AND ORDERS—CHARITABLE INSTITU-TIONS—FEEBLE=MINDED.

[Franklin (2nd) Circuit Court, March 25, 1905.]

Dustin, Wilson and Sullivan, JJ.

GUSTAVUS DOREN ET AL. v. JOSEPH FLEMING.

1. ERROR IN OVERRULING MOTION TO ARREST CASE FROM JURY NOT REVIEWED, WHEN.

An assignment of error based upon the contention, that the trial court erred in overruling defendant's motion to take the case from the jury and dismiss the action will not be reviewed on error when the defendant after the motion was overruled elected to proceed with their testimony, introducing testimony tending to support in part claims made in the petition and not rely upon their claim that plaintiff had failed to prove this case.

2. COURTS DO NOT PRESCRIBE RULES FOR CHARITABLE INSTITUTIONS, ETC.

The court will not assume the authority to prescribe rules for the government of state charitable and benevolent institutions; their authority to interfere arises only where it is shown that the rules are unreasonable and subversive of the purposes for which such institutions are established and maintained.

3. RULE MAKING INMATES OF CHARITABLE INSTITUTION SUBJECT TO DIRECTION OF PARENTS REASONABLE, WHEN.

The rule adopted by the trustees of the state institution for the feeble-minded, that all inmates should be entirely subject to the direction of their parents, and be discharged therefrom upon their order or direction, is reasonable.

4. DUTY OF SUPERINTENDENT OF INSTITUTION FOR FEEBLE-MINDED TO RETURN ESCAPED INMATES, ETC.

When an inmate of the state institution for the feeble-minded escapes from the institution without any authority from his parents or those who were instrumental in placing him there, a duty devolves upon the superin-

47 O. C. C. Vol. 27

tendent to have him returned. And where such superintendent had nothing to do with having such person admitted to the institution, except that he propounded certain interrogatories for the purpose of ascertaining whether he was a proper subject for admission, as authorized by the rules adopted by the trustees, he is not liable in damages for performing his duty in having such inmate returned.

ERROR to Franklin common pleas court.

**Smith Bennett,** for plaintiff in error.
**M. E. Thrailkill,** for defendant in error.

SULLIVAN, J.

Joseph Fleming, the defendant in error, on July 16, 1904, recovered a judgment in the court below against plaintiffs in error for the sum of $412.50, together with costs of suit. The suit was for damages and the trial was to a jury. Plaintiff's motion for a new trial was overruled and a judgment entered upon the record against plaintiffs in error for the amount above stated. A bill of exceptions was taken by plaintiffs in error containing all the testimony submitted to the jury and is filed here, together with the transcript and original papers. Plaintiffs in error complain that said judgment is erroneous, and therefore ask that the same may be reversed for errors set forth in their petition, and apparent upon the record. Plaintiffs claim first that it is apparent from the record that the court erred in overruling their motion made at the conclusion of the testimony of plaintiff below, to withdraw the case from the jury and dismiss the action. This question cannot be considered by this court for the reason that the defendants below after this motion was overruled, elected to proceed with their testimony, which testimony tended to support the claim of plaintiff in part that Fleming had not been admitted regularly to the institution, and not rely upon their claim that plaintiff below had failed to prove his case. The other grounds of error assigned are:

First. That the judgment is against the weight of the evidence and not sustained by it.

Second. That the judgment is contrary to law.

Third. That the court below erred in overruling plaintiff's motion for a new trial. The grounds of the motion for a new trial are the same as above stated.

Though separately stated there is really but one ground of error set forth in plaintiff's petition and that is, that the verdict is manifestly against the weight of the evidence, and if this be true, then the verdict would be contrary to law. Hence the sole question here, is the

Doren v. Fleming.

verdict of the jury supported by the weight of the evidence or any evidence. It nowhere appears from the evidence that any of the plaintiffs in error aside from Gustavus Doren, had anything to do with or were engaged in any way in bringing Fleming to the institution, in October, 1892, or that they in any way restrained Fleming while there and yet the verdict is a joint one, covering the entire period that Fleming was at the institution. This is not averred as error, and it is perfectly apparent from the evidence, if they are liable at all, it would be only for return of Fleming to the institution August 10, 1902.

Coming now to the consideration of the evidence, set forth in the bill, we find there is not a scintilla of evidence tending to prove that the superintendent of the institution, Gustavus Doren, was actuated by any improper motive, in receiving Joseph Fleming into the institution, or that it was done with any hope or expectation of any personal benefit to himself, and further there is not a scintilla of evidence that said superintendent received any personal benefit from any labor or anything done by Joseph during the entire period he was at the institution. If the proceedings taken for the admission of Joseph were irregular, the evidence shows that they were not inaugurated by the superintendent and such part as shown by the evidence taken by him was necessary and with the view to discharge his duty and for the benefit of the patient.

The undisputed evidence shows substantially the following state of facts:

Joseph was without a home. He had been driven from the home where he had lived for some seven years. His relatives, residents of Columbus, one being the sister of his father with full knowledge of his situation and condition did not want to furnish him a home, so they, together with the priest superintendent of the parochial school Joseph had attended up to that time, held a conference at which they determined from their knowledge of Joseph's situation and mental condition that he was a proper subject and entitled to enter the state institution for the feeble-minded. The relatives of Joseph, or at least some of them took steps to have him entered there. They stated that Joseph was fourteen years of age or thereabouts. The statute does not provide that the applicant should be first examined as to his or her mental condition, but authorizes the trustees to prescribe and publish instructions and forms for the admission of pupils, and they may include therein such interrogatories as they may think necessary or useful to have answered.

The trustees in pursuance of this authority did formulate and

publish rules for the admission of applicants, and authorized the superintendent to submit such interrogatories as he thought should be answered by the parents, guardians, etc., of the applicant. The rules provide that applicants may be admitted by the superintendent with the advice and counsel of the executive committee. Laning R. L. 1108 (R. S. 671) provides who may be admitted. Any person of the class therein named are entitled to admission. The legislature for wise reasons no doubt, left with the trustees the authority to say what proceeding should be taken to enable them to determine whether an applicant was of the class named in Lan. R. L. 1108 (R. S. 671), *supra*. Interrogatories were propounded by the superintendent to be answered by persons presenting the applicant for admission. Numbers 7, 11, 12 and 26 relate directly to symptoms that would be a subject of inquiry, if an examination by some authority outside of the institution was required. In addition to this the superintendent testifies that he made an examination as to Fleming's mental condition the day he was brought to the institution. True, Fleming denies this, but no other witness corroborates Fleming. The superintendent states that he found Fleming came within the class named in Lan. R. L. 1108 (R. S. 671) and hence entitled to admission. Upon this matter he is corroborated by such a number of respectable and unimpeached witnesses that there can be no doubt as to the fact. The relatives who made the application were the nearest friends of Joseph and those who are still living do not deny, but admit that they applied to have Joseph admitted. Neither do they deny their answers to the several interrogatories submitted to them. Hence, it is wholly immaterial whether they did or did not sign them. It was left to the superintendent as to what interrogatories should be answered by parents.

In conclusion upon this point we are clearly of the opinion that Joseph was a proper subject to be admitted to the institution and that he was not unlawfully deprived of his liberty thereby. Joseph testifies that he knew he could not be discharged from the institution, except upon the application or order of those who placed him there if living. He wrote his uncle and aunt, who, in connection with Ryan, now dead, procured his admission, to take him out, but they refused and said to the superintendent that the institution was the better place for him. The superintendent in person solicited the uncle to take him out and give him work. The uncle admits this and that he reused to do so. The rule that those admitted should be entirely subject to the direction of the parents, and discharged therefrom upon their order or direction we are of the opinion is a very salutary one. Were it otherwise, any-

Doren v. Fleming.

one at his or her pleasure upon their own volition might leave and ramble anywhere and everywhere without the needed care and supervision of anyone.

When Joseph left the institution July 27, 1902, it was without any order from those instrumental in placing him there and it was the duty of the superintendent to have him returned to the institution, as much so as it would be his duty to return a youth of tender years. The rules must be uniform; otherwise the efficiency of the institution would be destroyed. We are therefore of the opinion that the superintendent acted within the scope of his authority and the return of Fleming was not a legal wrong. Courts will not and do not assume the authority to prescribe rules for the government of institutions of this character. Their authority to interfere arises only when it is shown that a rule or rules are unreasonable and subversive of the purposes for which such institutions are established and maintained by the state.

We are of the opinion that the rule observed by the authorities of the institution and enforced against Joseph when returned to the institution upon August 10, 1902, is not an unreasonable one. Joseph's own testimony, is we think, entitled to but little credit. In support of this view we regard it necessary only to call attention to his testimony respecting his statement to Powell relative to a contract with the Press Post, and his denial of such contract, and that he simply told the falsehood to get clear of his inquisitor. He admitted the falsehood he told the party who accosted him one evening after dark within the enclosure of the grounds of the institution, that he had been trusted to the care of the conductor when he came from Minneapolis here, and immediately after, admitted he was placed in the care of an uncle from Minneapolis to Chicago and from there to Columbus in the care of a cousin of his mother's. In face of the testimony of the nurse, Frank Goehlhart, not denied by Fleming, Fleming's statement of the treatment he received whilst kept on the third floor, we think is not correct. He is contradicted not only by witnesses of the defendant's, as to the time he was kept in the room on the third floor, but also by George Hill, his own witness, who testifies he was there but two weeks, corroborating defendant's witnesses upon this point.

Upon the whole record we think that the verdict in this case is not only against the weight of the evidence, but that there is no evidence to support it and the judgment therefore will be reversed and the cause remanded at the costs of defendant in error.

**Dustin** and **Wilson, JJ.**, concur.